IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JONATHAN ROBERT TUSA, JR., )
    Petitioner, )
)
    v. ) 2:12-cv-1881
)
LOUIS FOLINO, et al., )
    Respondents. )

MEMORANDUM and ORDER

Mitchell, M.J.:

    Jonathan Robert Tusa, Jr., an inmate at the State Correctional Institution at Waynesburg has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition (ECF 1) will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

    Tusa is presently serving a life sentence imposed following his conviction by a jury of first degree murder and first degree murder of an unborn child at No. CP-10-CR-138-2005 in the Court of Common Pleas of Butler County, Pennsylvania. This sentence was imposed on October 24, 2006.[1]

    An appeal was taken to the Superior Court in which the issues presented were:

1. Whether the trial court erred in failing to grant Tusa's Motion for Change of Venue/Venire?

2. Whether the trial court erred in denying Tusa's motion *in limine* concerning the testimony of the Commonwealth witnesses Giza and Tertmyer?

3. Whether the trial court erred in denying Tusa's motion *in limine* regarding the autopsy photograph of the victim?

4. Whether the trial court erred in qualifying Corporal Burlingame as an expert and then allowing him to testify as an expert on the subject of distances?

5. Whether the trial court erred in denying Tusa's motion for an instruction on voluntary manslaughter?

---

[1] See; Petition at ¶¶ 1-6.

1

6. Whether the trial court erred in not granting Tusa's motion for judgment of acquittal at the conclusion of the Commonwealth's evidence?

7. Whether the trial court erred in finding the evidence sufficient to sustain a verdict of guilty on the charge of first degree murder after the jury verdict?[2]

On September 2, 2008, the judgment of sentence was affirmed.[3]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the issues presented were:

A. Did the Superior Court err in failing to address Tusa's properly preserved issue regarding the failure of the trial court to give an instruction on voluntary manslaughter?

B. Did the Superior Court err when it ruled that the trial court did not err in denying Tusa's motion in limine regarding the testimony of the Commonwealth witnesses, Giza and Tetmeyer?

C. Did the Superior Court err when it ruled that the trial court did not err in qualifying PSP Corporal Burlingame as an expert and then permitting him to testify as an expert on the subject of distances?[4]

Leave to appeal was denied by the Pennsylvania Supreme Court on February 24, 2009.[5]

On May 22, 2009, Tusa filed a post-conviction petition.[6] Relief was denied on November 19, 2010[7] and an appeal was filed in the Superior Court in which the issues presented were:

1. Did the PCRA court commit an error of law when it determined that trial counsel, Attorney Richard Goldinger and Charles Nedz were not ineffective for failing to object to the improper jury instructions delivered by the Honorable George Hancher when he failed to instruct on voluntary intoxication when the jury had questions regarding the first and third degree murder changes which prejudiced the defendant and led directly to his conviction of first degree murder rather than to the reduced charge of third degree murder?

2. Did the PCRA court commit an error of law when it determined that trial counsel was not ineffective for failing to illicit proper testimony from Daniel Tusa and for failing to call Bobette Tusa during the guilt phase of the trial?

---

[2] See: Exhibit X to the answer at p.4.
[3] See: Exhibit Z to the answer.
[4] See: Exhibit BB to the answer at p.3.
[5] See: Exhibit DD to the answer.
[6] See: Exhibit A to the answer at p.40.
[7] See: Exhibit JJ to the answer.

3. Did the PCRA court commit an error o[f] law when it determined that trial counsel was not ineffective for failing to search for and/or call character witnesses at the guilt phase of the trial?

4. Did the PCRA court commit an error of law when it determined that appellate counsel, Alexander Lindsey was not ineffective for failing to include in the defendant's appellate argument a best evidence issue regarding a letter allegedly penned by the defendant but never produced at trial?[8]

On November 29, 2011, the denial of post-conviction relief was affirmed.[9]

A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which the questions presented were:

I. Did the Superior Court err in finding that trial counsel was not ineffective for failing to object to the re-read jury instructions and that the trial court did not commit an abuse of discretion in failing to include the charge for voluntary intoxication in the supplemental charges?

II. Did the Superior Court err in finding that trial counsel was not ineffective for failing to call character witnesses on behalf of Mr. Tusa?[10]

On May 1, 2012, the petition for allowance of appeal was denied.[11]

In the instant petition executed on December 13, 2012, Tusa contends he is entitled to relief on the following grounds:

1. Trial counsel was ineffective in that after stating in opening argument that the case was not a case of murder but involuntary manslaughter he asked the jury in closing to return a verdict of third degree murder thereby conceding petitioner's guilt. Counsel also failed to fully investigate the case, failed to interview and call witnesses with relevant testimony and failed to comprehend the forensic evidence submitted by the prosecution which conflicted with that of a leading ballistics expert.

2. The court's erroneous admission of misleading testimony by an expert witness, Corporal David J. Burlingame, and qualification of same witness to testify to muzzle-to-target distance.

3. The court erroneously denied petitioner's request for jury instructions on voluntary manslaughter.

---

[8] See: Exhibit NN to the answer at p.4.
[9] See: Exhibit PP to the answer.
[10] See: Exhibit RR to the answer.
[11] See: Exhibit TT to the answer.

3

4. The court erroneously admitted hearsay evidence from two witnesses who testified that the petitioner's wife had told them that he had assaulted her on an occasion in January 2003, two years prior to his wife's death.

5. The trial court erroneously denied a judgment of acquittal based on the insufficiency of the evidence to support a first degree murder conviction.[12]

The background to this prosecution is set forth in the September 2, 2008, Memorandum of the Superior Court:

> On December 12, 2004, the Pennsylvania State Police (PSP) discovered the body of Dawn Elizabeth Tusa, the victim and also Appellant's wife, along Winters Road in Penn Township, Butler County, in a 2004 Honda Sedan. The victim had died of a gunshot wound to her forehead, and her body laid between the driver's side and the passenger's side of the front seat of the vehicle. From the position of the vehicle and the victim's body, it had appeared to the police that the victim drove the vehicle in haste away from the driveway of 195 Winters Road (Appellant's and her residence) and struck a nearby hillside. The police discovered three spent shell casings in the driveway of the residence, and, within the unoccupied residence at 195 Winters Road, the police discovered several semi-automatic weapons, including a TEC-9 9mm semi-automatic handgun.
>
> The PSP investigation determined that the victim was pregnant at the time of the shooting and that Appellant had fled from Pennsylvania to the State of Ohio. The Smith Township Ohio Police Department arrested Appellant, and, while he was detained, PSP Trooper Mark E. Bardzil and Corporal Raymond Melder conducted an interview of Appellant. After being read his **Miranda** rights, Appellant told the PSP officers that he and the victim were at a party on the evening of December 11, 2004, whereat he drank beer and used cocaine. After the two returned home in the early morning hours of December 12, 2004, the victim thought that Appellant was again using cocaine, and she threatened to leave him, telling him that he had to make a choice between her and drug use. Appellant stated that the victim got into her vehicle and started to back out of the driveway, whereupon he shot at her vehicle with the TEC-9 to disable it. Appellant stated that the vehicle crashed into the hillside, and he broke the window in an attempt to get the victim out of the vehicle. Appellant also told the PSP that he shut the vehicle off at that time and returned to his residence to use the telephone. At that point, Appellant discontinued the interview and requested an attorney.
>
> Based on the fruits of their investigation, the PSP arrested Appellant and charged him via criminal complaint… Thereafter, the Commonwealth filed a criminal information charging Appellant with first-degree murder and first--degree murder of an unborn child, and it notified Appellant of its intent to seek the death penalty via a notice of aggravating circumstances. The case proceeded through pre-trial pleadings, and on October 16, 2006, trial commenced. At the conclusion of trial

---

[12] See: Petition at ¶ 12.

4

on October 19, 2006, the jury convicted Appellant of first-degree murder and
first-degree murder of an unborn child. After the penalty phase concluded, the
jury recommended a sentence of life imprisonment.[13]

The first issue which the petitioner seeks to raise here is the alleged ineffectiveness of counsel. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to the effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." <u>Id</u>. at 688; <u>see</u> also <u>Williams v. Taylor</u>, 529 U.S. 362, 390-91 (2000). Second, under <u>Strickland</u>, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694. The <u>Strickland</u> test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>Rainey v. Varner</u>, 603 F.3d 189,197 (3d Cir.2010) cert. denied 131 S.Ct. 1673 (2011). As a result, if a petitioner fails on either prong, he loses. <u>Rolan v. Vaughn</u>, 445 F.3d 671 (3d Cir.2006).

Tusa specifically contends that counsel was ineffective for stating in his opening that the case was not one of murder but rather of involuntary manslaughter and in his closing argument asked the jury to return a third degree conviction thereby conceding the petitioner's guilt.

This claim was never raised in the Pennsylvania appellate courts. Since he can no longer return to the state courts to raise this issue[14] a procedural default has occurred and because there is no showing that petitioner was barred from raising this claim it is not properly before this Court for review. <u>Maples v. Thomas</u>, 132 S.Ct. 912 (2012).

---

[13] See; Exhibit Z to the answer at pp.1-3.
[14] See: 42 Pa.C.S.A. § 9545(b)(1), permitting a one year period from the time in which the conviction becomes final to raise an issue in a post-conviction proceedings.

5

Even if a procedural default had not occurred, this argument is meritless. Under Pennsylvania law, involuntary manslaughter results from "doing an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner" resulting in the death of another person. 18 Pa.C.S.A. § 2504(a). By his own admission at trial, petitioner conceded he had shot at his wife's vehicle (TT.10/19/2006 pp.62-64). As a matter of state law, the trial court concluded that there was no legal basis for instructing the jury on involuntary manslaughter (TT. 10/19/2006, p.23), and as such the matter is not properly subject to review here. Swarthout v. Cooke, 131 S.Ct. 859 (2011).

Petitioner next argues that counsel was ineffective for failing to fully investigate his case; failing to interview and call witnesses with relevant testimony and failing to comprehend the prosecution's forensic evidence. The challenges alleging failure to investigate and call witnesses were presented to the Pennsylvania Superior Court as Tusa's second and third post-conviction issues.

In the Superior Court Tusa contended that counsel was ineffective for not calling his father Daniel Tusa to testify about the petitioner's condition when he arrived at his father's house after the incident and his reaction when he learned of the death of his wife; that counsel was ineffective for failing to call his grandmother, Bobette Tusa as a witness regarding his happiness upon learning of his wife's pregnancy and that counsel was ineffective for failing to inquire of his father and grandmother about his peaceful nature.[15]

At trial, petitioner's father testified about his general demeanor when he arrived at his house and petitioner's reaction when he learned of his wife's death (TT. 10/14/2006 pp.208, 212, 219-220). In addition, while not called as a witness, his grandmother's testimony would merely have been cumulative of other testimony, including his own, at learning of his wife's pregnancy. Thus, these issues merely regard cumulative testimony and are without merit.

The petitioner also contends that counsel was ineffective for failing to introduce testimony of his peaceful nature. At the post-conviction hearing, counsel testified upon investigation he learned petitioner had a reputation for violence and as a strategic decision he determined it best not to call those witness. (PCRA 4/20/2010, pp.28-32).

---

[15] See: Exhibit PP at pp.8-10.

As a matter of sound trial strategy, this issue is not subject to review here. Rolan v. Vaughn, 445 F.3d 671 (3d Cir.2006).

Tusa also alleges that appellate counsel was ineffective for failing to raise a best evidence issue regarding a letter allegedly written by petitioner but not produced at trial. As the Superior Court observed, there was never a best evidence issue raised at trial and as a result appellate counsel cannot be deemed to have been ineffective for failing to raise this matter.[16] At the post-conviction hearing appellate counsel testified that he had attempted to prioritize issues raised on appeal; that a best evidence issue is a weak appellate issue and the issue was never raised by the petitioner. (PCRA 4/20/2010 p.5). Thus, as a matter of appellate strategy, appellate counsel cannot be faulted for failing to raise what he considered a losing argument. Rolan v. Vaughn, supra.

Petitioner next contends that counsel was ineffective for failing to object to the trial court's re-reading its jury instruction on the definitions of first and third degree murder and failing to re-explain its voluntary intoxication instruction.

The Superior Court set forth this matter as follows:

> Tusa's defense to the charge of first-degree murder was that he lacked the requisite intent to kill his wife, as he was intoxicated due to cocaine and alcohol usage. As such, at the conclusion of closing arguments in the guilt phase of the trial, the trial court instructed the jury as to the elements of the crime for which Tusa was charged [i.e. first and third degree murder]. A voluntary intoxication instruction was part of this charge. Specifically, the trial court explained to the jury, under Pennsylvania law, 18 Pa.Cons.Stat.Ann,. § 308, evidence of voluntary intoxication may be offered by a defendant to reduce murder from first- to third-degree. **See** N.T., Trial 10/19/06, at 115-116.
>
> After approximately three hours of deliberation, the jury requested a copy of the definitions of first- and third-degree murder from the Court. **See Id.**, at 126-127. The trial court aptly stated that, it could not provide the jury with a written copy of anything that it had read. **See id.**, at 128-129. However, the trial court offered to re-read the instruction to the jury. **See id.**, at 127-128. During an in chambers conference, counsel for Tusa asked that the entire homicide charge, including voluntary intoxication be re-read. **See id.**, at 127. The Commonwealth objected arguing that the jury's question only involved the definitions of first and third degree murder. **See id.** Defense counsel adamantly advocated on behalf of Tusa, for a re-reading of the voluntary intoxication charge claiming that "[the jury] can't consider first and third without considering what they are supposed to do" and that "voluntary intoxication goes hand in hand with first degree murder, Your

---
[16] See: Exhibit PP at p.11.

Honor, as far as the consideration is concerned." **Id.** The trial court disagreed with defense counsel's position, stating that [the jury] didn't ask me about that." **Id.** The trial court then stated that it was "going to ask the foreperson who signed [the question] does the jury want [it] to reread the charge for first degree murder and third degree murder." **Id.,** at 128.

In the presence of the jury, the trial court then queried the foreperson: "[d]oes the jury want me to reread those two charges on first and third degree murder, Mr. Foreman" … The foreperson replied "[y]es, Your Honor, we would like you to reread them." **Id.** The trial court proceeded to re-read the definitions of first- and third-degree murder to the jury. **See id.**, at 129-132.[17]

This argument is clearly without merit. As the record demonstrate, when the jury requested further instruction on first and third degree murder, defense counsel sought to have the court include its instruction on the voluntary intoxication defense. Upon inquiry the court concluded that the jury solely requested to be reinstructed on first and third degree murder and the court proceeded accordingly. Defense counsel clearly argued this matter, was overruled by the court and cannot be deemed to have been ineffective.

Additionally, Pennsylvania law holds that "the scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge…" Com. v. Akers, 572 A.2d 746 (Pa.Super.1990). The issue which the petitioner seeks to raise here was decided solely as a matter of Pennsylvania law, and for this reason is not subject to further review here and for this additional reason does not provide a basis for relief. Swarthout v. Cooke, supra.

Petitioner next contends that counsel was ineffective for failing to engage a forensic expert to testify in a manner contrary to the prosecution's witness, Corporal David J. Burlingame on October 16, 2006.[18] Over vigorous objection by defense counsel, the court accepted Burlingame as a ballistics expert specifically recognizing his ability to testify as to distance between a weapon and an object shot by that weapon (TT. 10/16/2006 p.157). Petitioner now argues that counsel was ineffective for failing to call a rebuttal ballistics expert. This issue was never raised in the Pennsylvania appellate courts, is procedurally defaulted and for this reason does not provide a basis for relief here.

---

[17] See: Exhibit PP at pp. 5-7 citing to the transcript of October 19, 2006 which appears as Exhibit K.
[18] Corporal Burlingame's testimony appears as Ex. E pp.129-191, Exhibit F pp.3-42.

As his second issue the petitioner contends that the court erred in admitting the expert testimony of Burlingame. This issue was presented to the Superior Court on direct appeal where it was concluded as a matter of state law that the officer was competent to testify as an expert[19] and for this reason this allegation is not subject to review here. Swarthout v. Cooke, supra. Furthermore as an evidentiary matter this issue is not subject to review here unless a fundamental due process violation occurred. KIeller v. Larkins, 251 F.3d 408 (3d Cir.2001). No such showing is made here.

Petitioner's third issue is that the trial court erred in not instructing the jury on voluntary manslaughter. Although raised as an issue on direct appeal, it was not directly addressed by the Superior Court.[20] However, this failure at least permits the presumption that the issue was rejected on its merits. Johnson v. Williams, 133 S.Ct. 1088 (2013).

Pennsylvania defines voluntary manslaughter as the killing of an individual when acting under a sudden and intense passion resulting from serious provocation. 18 Pa.C.S.A. §2503(a). At his trial, petitioner testified that after a dispute with his wife, she got into her car, he picked up a gun and "shot a couple rounds at the car." (TT. 10/19/06 p.62-64).

A state trial court's jury instructions must be reviewed as a whole. Estelle v. McGuire, 502 U.S. 62 (1991, and the trial court is only required to charge on a lesser offense when such an instruction is supported by the evidence. Estelle v. McGuire, 502 U.S. 62, 71-72 1991)("As we have stated … the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief.").

There was no allegation of sudden and intense passion or serious provocation which might justify such an instruction, but rather the trial focused on petitioner's reaction to his wife's attempt to leave their home. A jury instruction is warranted only when the evidence would support such a verdict, and the trial court concluded as a matter of state law such an instruction was not supported by the evidence and for this reason was inappropriate.[21] Accordingly, this determination is dispositive here, Swarthout v. Cooke, supra., and the claim does not provide a basis for relief.

The petition contends in his forth issue that he is entitled to relief as a result of the trial court erroneously admitted hearsay evidence. Alleged state court evidentiary errors do not

---

[19] See: Exhibit Z at pp. 12-14.
[20] See: Exhibit Z.
[21] See: Exhibit T.

provide a basis for federal relief unless those errors rise to the level of a due process violation. Keller v. Larkins, 251 F.3d 408 (3d Cir) cert.denied 534 U.S. 973 (2001).

In his forth issue Tusa contends that the trial court erred in admitting the testimony of two witnesses who related that the decedent had told them that the petitioner had assaulted her in January 2003. In analyzing this claim the Superior Court wrote:

> Appellant asserts … that the evidence of spousal abuse in this case is not admissible for its truth because the Commonwealth presented the evidence in this case through hearsay testimony. Appellant's assertion is correct… However, evidence that is not admissible for one purpose may be admissible for another … As our Supreme Court explained … evidence of abuse may also be admitted through hearsay statements to demonstrate the victim's state of mind regarding the defendant when the defendant places the victim's state of mind at issue through a defense theory of accidental death … while Appellant notes correctly that the Commonwealth was unable to present the hearsay statements of the victim regarding Appellant's instances of spousal abuse through the testimony of [the two witnesses] for the statements' truth, the hearsay statements were admissible to demonstrate the victim's state of mind, because Appellant placed her mental state in issue through his proffered theory of accidental shooting death … Consequently, the victim's statements were admissible to disprove Appellant's theory of accidental death of the victim by demonstrating that she was in mortal fear of him due to his previous actions. As such, Appellant's issue fails (citations omitted)[22].

Clearly, this issue was decided as one of state law and is not subject to review here. Swarthout v. Cooke, supra. In addition, the petitioner was not denied his due process or confrontation rights since the statements were not admitted as testimonial evidence but rather were introduced to demonstrate the victim's state of mind giving rise to her subsequent conduct. See: Michigan v. Bryant, 131 S.Ct. 1143 1155 (2011)("there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony").  Because the testimony was not introduced for purpose of proving spousal abuse but rather for the limited purpose of demonstrating the victim's state of mind, this claim does not provide a basis for relief here.

Finally, Tusa contends he is entitled to relief on the grounds that the evidence presented was insufficient to sustain a first degree murder conviction. In reviewing such a claim, a federal court must determine whether the evidence was sufficient for any rational fact-finder to determine guilt beyond a reasonable doubt. Coleman v. Johnson, 132 S.Ct. 2060 (2012).

---

[22] See: Exhibit Z to the answer at pp.11-12.

The petitioner was convicted of first degree murder and first degree murder of an unborn child.[23] The evidence as analyzed by the Superior Court which determined under state law that:

> The jury convicted Appellant of first-degree murder and first-degree murder of an unborn child. To convict a defendant of first-degree murder they jury must find the following facts: (1) that he unlawfully killed a human being; and (2) that he did so in an intentional, deliberate, and premeditated manner … it is the element of a willful, premeditated, and deliberate intent to kill that distinguishes first-degree murder from all other criminal homicide … The specific intent to kill may be inferred from the defendant's use of a deadly weapon upon a vital part of the victim's body … Similarly, to convict a defendant of first-degree murder of an unborn child, the jury must find that the defendant unlawfully killed an unborn child intentionally …
>
> The facts presented at trial indicate that Appellant shot the victim, his wife, in the forehead with a semi-automatic handgun and that both she and her child *in utero* died as a result of the gunshot wound. The facts also indicate that Appellant was aware that the victim was pregnant at the time of the shooting. Given that Appellant shot the victim in the forehead, a vital part of the victim's body, and given also that he did so with the knowledge that she was pregnant, we, as did the jury, infer from the facts that Appellant intended specifically to kill both the victim and her child *in utero*… We are unconvinced by Appellant's argument that he shot merely at the victim's car to disable it; proof that a defendant used a deadly weapon on a vital part of a victim's body is sufficient to support an inference that the defendant possessed the specific intent to kill a victim… The fact that Appellant did not precisely aim the handgun at a vital part of the victim's body does not negate this inference … Further, Appellant testified and the jury rejected his explanation of the shooting. Our standard of review precludes this Court from usurping the jury's credibility-determining function.(citations and footnotes omitted).[24]

Thus, the issue was determined as a matter of state law and as such is not subject to review here. Coleman v. Johnson, supra. Additionally, since there clearly was sufficient evidence presented to sustain the conviction, as a matter of federal law this issue does not provide a basis for relief.

Accordingly, because there is no showing that the petitioner's conviction was secured in any manner contrary to the laws of the United States as determined by the Supreme Court nor involved an unreasonable application of those determinations, the petitioner's claims are without

---

[23] Pennsylvania defines first degree murder as a homicide committed by an intentional killing. 18 Pa.C.S.A. § 2502(a). First degree murder of an unborn is defined as intentional, knowing, reckless or negligent causing the death of an unborn child by an intentional act. 18 Pa.C.S.A. §§ 2603(a) and 2604(a)(1).

[24] See: Exhibit Z to the answer at pp. 6-7.

merit and his petition will be dismissed. Additionally, be reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

ORDER

AND NOW, this 21st day of May, 2013, for the reasons set forth in the foregoing Memorandum, the petition of Jonathan Robert Tusa, Jr. (ECF 1) is DISMISSED, and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is DENIED.

s/ Robert C. Mitchell
United States Magistrate Judge